IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RONALD BURKE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:19-cv-00744-P |
| § | |
| CITY OF FORT WORTH, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Ronald Burke alleges that Defendant the City of Fort Worth retaliated against him for reporting the City's legal violations and taking FMLA leave. He originally filed suit in state court, and the City removed it. Now before the Court is the City's Motion for Summary Judgment. ECF No. 36. After considering the motion, Burke's response (ECF No. 40), and the papers on file, the Court concludes that Burke's FMLA claims fail as a matter of law and should therefore be **DISMISSED with prejudice**. Having dismissed the federal claim, the Court declines to exercise supplemental jurisdiction over Burke's Texas Whistleblower Act claim, and instead orders the claim be **REMANDED**.

## BACKGROUND

On May 29, 2015, the City of Fort Worth hired Burke as an Assistant Director of Information Technology Services. Pl.'s MSJ App'x at 3, ECF No. 39. In that role, he supervised multiple projects, including the City's compliance with the FBI's criminal database—the Criminal Justice Information Systems (CJIS). *Id.* 5. To oversee this project, Burke assigned William Birchett. *Id.* at 5. In May 2018, Birchett identified noncomplying

areas, which the City refused to remedy because the cost. *Id.* at 5, 10. On December 19, 2020, an audit revealed the City's noncompliance, threatening the City's access to the CJIS. Fearing the impact this would have on policing, Fort Worth Police Department Chief Joel Fitzgerald wrote a memo critical of the City's Information Technology Services. Def.'s MSJ App'x 142–51.

After receiving Chief Fitzgerald's memo, Kevin Gunn, the City's IT Director and Burke's supervisor, was livid. He ordered Burke to discipline Birchett for allowing the City to fall into noncompliance. Pl.'s MSJ App'x at 10. But Burke refused because Birchett had warned the City and proposed a solution—the City just believed the solution was too expensive. *Id.* at 5, 10. Over the next few weeks, the whole department scrambled to fix the issues. *Id.* at 354–55. The pressure, in addition to his PTSD, wore down Burke's mental health, leading him to schedule a doctor's appointment for stress in February. *Id.* On January 2, 2019, Gunn placed Birchett on administrative leave, citing his CJIS failures. *Id.* at 12.

Also on January 2, 2019, Gunn cited Burke for inadequately managing Birchett. Def.'s MSJ App'x at 532. On January 11, 2019, Gunn invited Burke into his office and gave him a pre-decision letter. *Id.* at 363. The letter stated that the City was "seriously considering the termination of [his] employment due to [his] failure to perform [his] duties in a satisfactory manner." Def.'s MSJ App'x at 534. Before the City decided, it would hold a meeting for Burke to respond on January 22. *Id.* For the next eleven days, the City placed Burke "off work on paid administrative leave." *Id.* at 534. Other than the communications below, this was the last communication between anyone at the City and Burke. *Id.* at 379.

Burke's stress levels then forced him to take off. *Id.* at 363. After receiving the letter, he scheduled an appointment with his doctor, who recommended that Burke immediately take FMLA leave. *Id.* On January 11, Burke notified the City that he was beginning FMLA leave immediately. *Id.* at 374. The City's staff was very helpful in starting Burke's FMLA leave. *Id.* Burke never talked with Gunn about taking FMLA leave. *Id.* at 375–76. On January 18, Gunn mailed Burke a letter rescheduling the meeting until "immediately upon your return" from FMLA leave. *Id.* at 537.

Burke then extended his FMLA leave until April 5, 2019, which depleted his entitlement. *Id.* at 558. During his leave, Burke decided he would not return to his job and found a job with Lockheed Martin. *Id.* at 370–73, 549. On March 22, Burke sent the City a letter demanding that "the City publicly apologize for its wrongful conduct, pay for his attorneys' fees, and pay restitution." *Id.* at 408. If the City failed to make these actions, then Burke would file suit under the Texas Whistleblower Act. Burke also contended that the City constructively terminated his employment. *Id.* at 408. On April 3, 2019, the City responded by denying these allegations and noting that Burke's "complaint of [his] constructive discharge was surprising given that Mr. Burke [was] still employed by the City as an Assistant IT Director and he [was] still accessing leave benefits . . . ." *Id.* at 475. Before leaving for Lockheed, Burke received his full FMLA benefits. *Id.* at 384–85, 393.

On May 22, 2019, Burke sued the City in Dallas County state court under the Texas Whistleblower Act. ECF No. 1-5. Around the same time, both Birchett and Fitzgerald also sued the City in Dallas County under the Texas Whistleblower Act. Burke's counsel represents all three plaintiffs. Both Birchett's and Fitzgerald's cases are currently on

interlocutory appeal before the Texas Fifth District Court of Appeals on sovereign-immunity issues. Both cases have been argued but, as of this order, there is no ruling.[1]

On September 5, 2019, Burke amended his state court petition and added FMLA interference and retaliation claims. ECF No. 1-15. The City removed the case, and on the Court's own order, it was transferred to the Fort Worth Division. ECF No. 1, 6. After completing discovery, the City moved for summary judgment on the FMLA and Texas Whistleblower Act claims. Burke filed a response, the City filed a reply, and the motion is now ripe.

## SUMMARY-JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1). Material facts are facts that, under the substantive law, potentially affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as

---

[1] *City of Fort Worth v. Fitzgerald*, Appellate Case No. 05-20-00112-CV (on appeal from the 191st Judicial District Court, Dallas County, Texas, Cause No. DC-19-08184); *City of Fort Worth v. Birchett*, Appellate Case No. 05-20-00265-CV (on appeal from the 162nd Judicial District Court, Dallas County, Texas, Cause No. DC-19-06941).

to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must show sufficient evidence to resolve issues of material fact in its favor. *Anderson*, 477 U.S. at 249.

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255. However, it is not incumbent upon the Court to comb the record in search of evidence that creates a genuine issue as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party must cite the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## FMLA CLAIMS

The Family Medical Leave Act (FMLA) provides that eligible employees are entitled to twelve workweeks of leave during any twelve-month period because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). The FMLA prohibits employers from (A) interfering with employees exercising their FMLA rights or (B) retaliating against employees who exercised their rights. *Id.* § 2615(a). Burke pleaded both claims.

A. **Burke's FMLA interference claim fails as a matter of law.**

Burke's interference claim fails because he received all the leave requested. To establish an FMLA-interference claim, an employee must show that the employer

5

"interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 209 (5th Cir. 2018). An "interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Id.* "A plaintiff suffers no FMLA injury when she receives all the leave she requests." *De La Garza-Crooks v. AT&T*, 252 F.3d 436 (5th Cir. 2001) (internal quotations omitted).

Burke admits that he took all his protected FMLA leave. Pl.'s MSJ Resp. at 29 ("[I]t is undisputed that the City did provide Burke with the FMLA leave to which he was entitled . . . ."). Burke testified that the City was helpful in accessing his FMLA rights, and that, other than a generally hostile work environment, the City did not interfere with his FMLA rights. Def.'s MSJ App'x at 374, 386. Thus, Burke's own testimony establishes that he was not denied any entitlement under the FMLA. *Shryer v. Univ. of Tex. S.W. Med. Ctr.*, 587 Fed. App'x 151, 155 n. 3 (5th Cir. 2014) (noting that plaintiff's interference claims failed "for the obvious reason that she was granted all the leave she requested").

Burke argues that the City interfered with his FMLA rights by failing to restore him to his position when he returned from leave. Pl.'s MSJ Resp. at 29–30. But this is hypothetical—Burke did not try to return. While still on FMLA leave, Burke accepted a job with Lockheed Martin and testified that, even if the City wanted him to return, he would not have returned. Def.'s MSJ App'x at 370–73. The City could not have interfered with Burke's return if Burke did not try to return. For these reasons, the City's summary-judgment motion on Burke's FMLA interference claim is **GRANTED** and the claim is **DISMISSED with prejudice**.

**B.  Burke's FMLA retaliation claim fails as a matter of law.**

Burke next claims the City retaliated against him for taking FMLA leave. The FMLA prohibits employers from retaliating against employees for using their FMLA rights. 29 U.S.C. § 2615(a)(2). This claim has three elements:

> (1) the employee engaged in protected activity;
>
> (2) the employee suffered an adverse employment action; and
>
> (3) the adverse action was made *because* he used FMLA rights.

*Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006). Burke argues that, because he took FMLA leave, the City fired him and placed negative reports in his "permanent file." Both arguments fail.

1.  <u>Burke's retaliatory discharge claim fails because he was not discharged.</u>

Burke first argues that the City retaliated against him by firing him. This claim requires the employer discharge the employee. *See Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020). Here, the City did not formally discharge Burke—nor does Burke argue that. Instead, he argues the City forced him to quit—i.e., constructive discharge.

Constructive discharge occurs when an "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Applying this standard depends on the facts and is necessarily case specific. *Id.* The following factors are relevant:

> (1) demotion,
>
> (2) reduction in salary,

> (3) reduction in job responsibility,
>
> (4) reassignment to menial or degrading work,
>
> (5) reassignment to work under a younger or less qualified supervisor,
>
> (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee to quit, and
>
> (7) offers of early retirement.

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). These factors are considered "singly or in combination." *Id.* Courts apply the factors from an objectively reasonable employee's perspective. *Id.*

Burke relies on two of seven factors. His first factor, harassment, does not apply. There is ample evidence that Burke's working environment was bad—his supervisor yelled, employees complained, and one employee even committed suicide at his desk[2]—but there is no evidence that it was "calculated to encourage [Burke] to quit." *Haley*, 391 F.3d at 650. Viewing the evidence in the light most favorable to Burke, his supervisor's *modus operandi* for years had been to yell and demean all employees. Thus, the harassment was not focused on Burke, but spread across the department. A reasonable employee would not interpret that behavior as calculated to make him, and everyone else, quit. Additionally, the harassment had no temporal relation to Burke's termination. It began years before and, Burke implies, will continue indefinitely. Def.'s MSJ App'x at 372–73. In fact, Burke even testified that he would "unequivocally" reject the City's offer of his old job because the

---

[2] *See* Pl.'s MSJ App'x at 14.

8

department's culture. *Id.* For these reasons, the Court finds that Burke's evidence failed to meet this factor.

The other factor Burke relies on is a reduction in responsibility. He cites the January 2nd pre-decision notice, which stated that the City was "seriously considering the termination of [Burke's] employment due to [his] failure to perform [his] duties in a satisfactory manner." Def.'s MSJ App'x at 534. But before it decided, it scheduled a meeting "to allow [Burke] an opportunity to respond to the reasons being considered to terminate [his] employment, which are explained further below." *Id.* In the eleven days between the notice and the scheduled meeting, the City placed Burke "off work on paid administrative leave." *Id.* Thus, the letter reduced his responsibilities to none.

Although the evidence technically satisfies this factor, it lends little support. The letter did not make his "working conditions so intolerable that [he was] forced into an involuntary resignation." After the letter, he had no working conditions—he was on paid, administrative leave. Instead, the letter announced that the City was "seriously considering" firing him. Some Circuits—but *not* the Fifth Circuit—find constructive discharge when the "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." *See Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014). But even under this rule, a letter stating that an employee *may be fired* fails to constitute constructive discharge. *Id.* (holding no constructive discharge when employee quit before meeting to determine his employment). In context, the City eliminating Burke's responsibilities for eleven days supports constructive discharge only weakly.

9

This weak factor must be balanced against the other factors' absence. *See Brown*, 207 F.3d at 782–83 (finding no constructive discharge where two factors, including reduction in responsibilities, were present). Having considered the law and evidence, the Court finds Burke's evidence fails to create a genuine dispute on the issue of constructive discharge. And without being discharged, Burke's FMLA retaliatory discharge claim fails as a matter of law and is therefore **DISMISSED with prejudice.**

    2. <u>The negative letters fail.</u>

Burke next argues that the City retaliated against him for taking FMLA leave through three other adverse employment actions: (a) the City's January 2 letter that stated Burke performed "inadequate management oversight" and reassigned some of his subordinates; (b) the City's January 11 letter that placed Burke on paid administrative leave until the pre-decision meeting; and (c) the City's April 3 letter accepting his resignation. These fail for the reasons below:

    a.  <u>The January 2 Letter</u>

Burke took FMLA leave on January 11—nine days ***after*** the City sent this letter. Cause must precede effect. *See Shryer*, 587 F. App'x at 155–56 (holding that actions that began before FMLA notice could not have been unlawfully motivated). Burkes argument flips this order. As a result, this letter could not have been retaliation for Burke's FMLA leave.

Burke tries to manufacture a genuine dispute of fact with his summary-judgment affidavit. He argues that, before January 2, the City knew he intended to take FMLA leave. But his own words contradict this. In Burke's September 18, 2020 deposition, the City

10

asked if Burke had "any conversations with Kevin Gunn about [Burke's] FMLA leave." Burke answered, "No." Def.'s MSJ App'x at 375–76. In other places, Burke testified that neither Gunn nor Wright would have known about his decision to take FMLA leave until *after* he took it. *See* Def.'s MSJ App'x at 362, 397, 398.

But three months after his deposition, in his summary-judgment affidavit, Burke states that, "in late December 2018 or early January 2019," he "informed Gunn that I needed time off work to deal with issues associated with my disability." Pl.'s MSJ App'x at 8. Burke "did not specifically use the phrase 'FMLA leave.'" *Id.* This vague reference to some conversation between him and Gunn—included in an affidavit his lawyer helped prepare—fails to overcome Burke's repeated and direct deposition testimony. *See Doe ex. Rel. Doe v. Dallas Indep. School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (recognizing the court's authority to ignore sham issues); *Bazan*, 246 F.3d at 489 ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") The undisputed facts show that the City was unaware that Burke intended to take FMLA leave until he took it. As a result, Burke's evidence fails to show a causal connection between his FMLA rights and the January 2 letter.

    b. <u>The January 11 Letter</u>

The same is true here. *First*, the City gave Burke this letter, *then* Burke took FMLA leave. Pl.'s MSJ Resp. App'x at 15–16. The FMLA leave could not have caused the letter.

    c. <u>The January 18 Letter</u>

This letter is not an adverse employment action. The letter rescheduled Burke's meeting with the City until Burke returned to work. "[Y]our pre-decision meeting as

11

scheduled above has been placed on hold until you return from FMLA leave and will be rescheduled immediately upon your return." Def.'s MSJ App'x at 532. Other than the rescheduling, the letter contained nothing new. And rescheduling the meeting—if anything—was not *adverse* but *beneficial*. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (holding adverse employment actions must produce harm from a reasonable employee's perspective). This letter was not an adverse employment action.

  d. <u>The April 3 Letter</u>

This letter also is not an adverse employment action. This letter responded to Burke's March 22, 2019 letter to the City. Def.'s MSJ App'x at 407–411. In that letter, Burke "contend[ed] that he was constructively terminated based on the conduct of the City taken as a whole." *Id.* at 408. But as discussed above, the City did not constructively discharge Burke. Therefore, the City's April 3 letter—which accepted Burke's "letter as notice of [his] resignation"—was correct. *Id.* at 475. And since the letter did not terminate his employment but merely recognized Burke's resignation, it caused Burke no harm. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67–68. As a result, the April 3 letter contains no adverse employment action.

For these reasons, the letters Burke refers to fail to meet the elements of a FMLA retaliation claim. Burkes' claim therefore fails and is **DISMISSED with prejudice.**

## REMAND

Without the FMLA claim, this dispute now involves a Texas resident suing a Texas City under a Texas statute. The Court must stop to examine its jurisdiction. *Parker & Parsley Petro. Co. v. Dresser Indus.*, 972 F.2d 580, 586 (5th Cir. 1992) (noting in

supplemental-jurisdiction cases that a court should review jurisdiction "at every stage of the litigation"). This is true even when the parties did not request jurisdictional review. *See The Lamar Co., L.L.C. v. Miss. Transp. Commission*, 976 F.3d 524, 528 (5th Cir. 2020) ("Every federal court should, on its own, ensure that subject-matter jurisdiction is present."). Under supplemental jurisdiction, the Court's exercise of jurisdiction over state claims is discretionary. 28 U.S.C. § 1367.

The "general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." *The Lamar Co.,* 976 F.3d at 528. In exercising its discretion, the Court first considers the "overall balance" of the statutory factors in 28 U.S.C. § 1367(c). *Enochs v. Lampasas Co.*, 641 F.3d 155, 159 (5th Cir. 2011). Then it considers the common-law factors of judicial economy, convenience, fairness, and comity. *Id.*

The overall balance of the statutory factors favors remand. Section 1367(c) sets forth four factors to consider when deciding to exercise supplemental jurisdiction: (1) whether state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

*First*, although the Texas Whistleblower Act is not new, Texas courts continually refine the act's nuances, and those nuances can be complex: was the violated law the correct type, was it a good-faith report, was the report to the correct law enforcer, and did Texas

13

waive immunity? Some of these issues lack clear guidance from the Texas Supreme Court. *Second*, all federal claims have been dismissed, so the state claim predominates. *Finally*, as further developed in the common-law factors, the circumstances also suggest declining jurisdiction. Thus, the overall balance of the statutory factors favors remand.

The common-law factors—judicial economy, convenience, fairness, and comity—also suggest remand. *Enochs*, 641 F.3d at 159. *First*, judicial economy's "most important" consideration is the judicial resources consumed. *Parker & Parsley Petro. Co.*, 972 F.2d at 587. So far, even though this case has been on the Court's docket for about 16 months, it has consumed little judicial resources. There have been no hearings or discovery disputes. The Court's only significant time was researching and drafting this order. The Court has not reviewed the state claim for legal sufficiency, nor has it reviewed any trial materials. On remand, the state court will consider those issues for the first time, meaning few judicial resources will be duplicated.

*Second*, remand will not cause significant inconvenience. Remand sends the case back to Dallas state court, where Burke originally wanted the case. The City apparently accepted that venue for both Fitzgerald's and Birchett's cases. This indicates that remand does not inconvenience the parties. Also, all the discovery, research, and case development in the federal court can be used in state court—the case is not starting fresh. Although trial here is seven weeks away and the parties have filed some preliminary trial materials, it is unlikely the parties have started serious trial preparation. *Id.* (noting remand appropriate when trial was "still a few weeks away"). And even if the parties had started preparing for

14

trial, that work can be used in state court. In sum, remand should cause little inconvenience, and may even create some convenience.

*Third*, remand will be fair to the parties, meaning it will not create "prejudice to the parties." *Parker & Parsley Petro. Co.*, 972 F.2d at 588. As mentioned above, the parties' resources spent in federal court through discovery, legal research, and general case development, can be used in state court. The case should be able to pick up there where it leaves off here. Although remand may cause the parties to go through plea-to-the-jurisdiction procedure, the parties should be familiar with that procedure, and the two cases on appeal now should assist in resolving a new dispute. In addition, keeping the case here may prejudice the parties by leading to inconsistent results. Birchett's and Fitzgerald's cases arise from the same general facts and are also governed by the Texas Whistleblower Act. Those cases are now on interlocutory appeal in state court, and it is not clear when either the Texas Fifth District Court of Appeals will rule, or the Texas trial courts will hold a trial. If this Court kept the case, it could be the first to apply the Texas Whistleblower Act to these facts and the first to try the case. Both results could differ from the case's state-court siblings. Remanding the case minimizes these risks by allowing the state courts to manage all three cases.

*Finally*, the strongest factor pushing for remand is comity. Our system of government divides power between the federal government and the states. Federal courts are courts of limited jurisdiction and should avoid meddling in purely state law. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

15

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (Brennen, J.); *see also* THE FEDERALIST NO. 17 (Alexander Hamilton) (writing as "Publius") (stating that "the ordinary administration of criminal and civil justice" would be left to the states).[3] When federal courts must rule on state claims, their construction of state law can be "uncertain and ephemeral." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 122 n. 32 (1984). This follows because "federal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts." Herbert Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 LAW & CONTEMPT. PROB. 216, 323 (1948) (cited in *Gibbs*, 383 U.S. at 726, n. 15). These truths apply with extra force here: two cases with very similar fact patters are currently before a Texas Court of Appeals. This federal district court should not be the first court to apply the Texas Whistleblower Act to these facts.

Having weighed both the statutory and common-law factors, nothing suggests the Court should depart from the general rule of declining supplemental jurisdiction over Burke's Texas Whistleblower Act claims. As a result, without making findings or any statement about the claim's merits, the remainder of the case is **REMANDED.**

---

[3]*See also* Letter from Thomas Jefferson to James Madison (Mar. 15, 1789), in THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON 426 (Adrienne Koch & William Peden, eds., 2004 Modern Library Paperback ed.) (1944) (The federal "judiciary . . . is a body, which, if rendered independent and kept strictly to their own department, merits great confidence for their learning and integrity.").

## CONCLUSION

For these reasons, Plaintiff's FMLA claims are **DISMISSED with prejudice**. This leaves the Texas Whistleblower Act as Burke's sole claim, and for the reasons above, the Court declines to exercise supplemental jurisdiction over this state claim. Accordingly, the Court hereby **ORDERS** that this case is **REMANDED** to the **193rd Judicial District Court of Dallas County, Texas**. The Clerk of this Court is **INSTRUCTED** to mail a certified copy of this Order to the District Court of Dallas County, Texas.

**SO ORDERED** on this **2nd day** of **February, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE